to airlines and council should feel free to begin whenever they're settled. I'm going to bring that down. Is that good? That's terrific. Thank you. Good morning. My name is Dane Durham. I represent the plaintiff in Appellant. This is an action for wrongful death of a 78-year-old woman who fell about 8 p.m. in a jetway provided by two common carrier airlines. A reasonable juror would have found for the plaintiff. The Seaton's family requested a wheelchair about one month before she fell in November 2004. Immediately after the decedent fell Mr. Durham, you don't have to prove that a reasonable juror would have found. All you have to prove is a reasonable juror might recently have found. Is that right? I was just trying to underline my assessment. If you want to run uphill, be my guest, but you don't have to. I think I'm going to change the would to could, Your Honor. Thank you. Immediately after the decedent fell, the defendants confirmed on their computer system that decedent's reservations contained a wheelchair request. Defendants provided a wheelchair for decedent on each prior leg of her or each prior flight included in those reservations. SkyWest did not follow its normal procedures. The flight attendant did not receive a departure list when the decedent's flight boarded in Salt Lake City. Southwest had no explanation. The Southwest flight attendant did not know whether any passengers had requested a wheelchair before they boarded. Notwithstanding, the flight attendant told the pilot that no passengers had requested wheelchairs, and the pilot passed that information along to Delta's ground crew ten minutes before the flight landed. When the aircraft door opened, the flight attendant again told a Delta gate agent no passengers had requested wheelchairs. But at that very moment, defendant's computer system showed that decedent's reservations contained a wheelchair request. Delta's gate agent relied on the flight attendant's incorrect statement and did not remain near the aircraft door to offer decedent a wheelchair when she stepped off the plane. I gather all this story came out during the course of the trial, correct? Yes, Your Honor. All right. And it got to a certain point in the trial, and the district court judge, who's a magistrate judge, actually acting as a, you can send it to his hearing the trial, granted a judgment notwithstanding the verdict, right? Well, again, being careful of my wording, he didn't really grant the motion that was made by the defendant's ---- Well, he ended the case. He ended the case. All right. Before you had been fully heard, correct? Correct. All right. Was that right? Was that correct to do that? Right. Not under the circumstances in which it occurred. Why not? Because I guess I think it was either the night of the first day of trial, the conclusion of the first day, possibly the second day, I receive a written motion for a directed verdict. I go home, and it contains two issues, causation and the jetway's not dangerous. I go home, I work really late, I come back, I bring a paper in, the judge ---- I'm sorry. The judge invites an offer of proof. I have lunchtime. I speak to one, possibly two witnesses. I make the presentation after lunchtime of an offer of proof. And the magistrate ---- That was not in front of the jury, correct? Not in front of the jury. The magistrate then makes a recitation of evidence, followed by, with an invitation for me to make comments and say that's not right, that's not right, followed by his announcement of a decision granting judgment as a matter of law based on two issues that were not raised by the defendant. So as I understand your argument, there were two procedural mistakes. The first was not allowing you to finish presenting your case to the jury, not by way of offer of proof, but by way of finishing your case, and secondly, deciding the directed verdict motion on a basis that was not offered by motion by the defense. The problem, the real problem I have, I can't say, Your Honor, that I know that etcheveria is the right rule for every court in the United States and for every circumstance. I'm not positive that or that I know that Federal Rule 50A or the comments or anything in combination say that you must let the plaintiff finish. Why not? Why isn't that a requirement? Why isn't that what fully heard means in the context of a directed verdict? How can you direct a verdict when you haven't heard the evidence that would go to the jury for its verdict? It seems like the language of the rule and the comment, and if you look at Moore's – I looked at – I cite a section from Moore's in my opening brief or reply brief, and I just went and looked at the 2006 update. It has the same language. It says you must be fully heard on the relevant issue. In other words, the way I interpret it is 50A says that a court can grant judgment as a matter of law on any issue. Well, I see what you're saying. So maybe if you have a liability phase and a damages phase, you only have to – if the issue is whether there's liability, you can end after the liability witnesses are done or something like that. Well, even an issue contained within liability, I can't think off the top of my head. But there could be, you know, a subsidiary issue, factual issue. And the Court says, well, I want – Or jurisdiction, personal jurisdiction or something like that. Okay. On one claim. And the Court says, well, I think you just don't have enough evidence there. The problem that I have was – Well, I mean, the whole – well, you know, one of the other things the district court judge is supposed to do is to give the party against whom the motion is made an opportunity to meet the court's concerns. And we've made that very clear in our case law. And gosh darn it, Judge, the way I understand 50A and the comment is, you really, as a lawyer, you got to – you got to hear what the judge thinks is the materiality of the evidence. In other words, I need to know what the law is and the facts that he's really concerned about. So I'll be able to go run out and talk to some witnesses, if that's what he wants me to do, and bring him back the best I can to meet his concerns about the deficiencies in my case. I can't do it if I don't know what the legal issues are. And that's what happened here. I wasn't told. And then, I mean, Echevarria seems to say it's not a – it really isn't a very helpful system, especially, you know, when you're midway through the case or you're into the case, to present a record to the court of appeal based on offers of proof from attorneys. It's a sloppy way to run the operation. Well, an offer of proof is just basically the attorney's oral representation about what the witness might have to say. It's different than if the parties would stipulate, if so-and-so were called as witness, we stipulate that the witness would testify to X, Y, and Z. That's not what happened here. And this is – I won't go off the record. But, anyway, sometimes you have witnesses that are not deposed, and so the other side doesn't know what's coming, and so it makes it tougher. So – Did you want to save some time for rebuttal? You were down to just a little over a minute. Yeah. Thanks. Thank you. Thank you. We'll hear from Mr. Williams. Good morning. How's that in here? Mark Williams from Missoula, Montana, for the record. If you could speak a little louder, that would help, too. I'll just keep your voice up. Okay. I think the most important thing for the court in this case is the record and the order of events. But there's an incomplete record, necessarily, when a party is not allowed to complete its case on – with actual witnesses. And let me address that by going back to the order of events and the record. The trial started on Monday. The defendant – or the plaintiff called liability witnesses Monday and throughout the day on Tuesday and began medical witnesses on Wednesday. At the end of the day on Tuesday, I made a motion for judgment as a matter of law, presented it to the plaintiff. The judge indicated he was considering that motion, indicated that the plaintiff should put on all of his liability evidence. Plaintiff had – The plaintiff hadn't rested, though, at that point. When you filed your motion, he had not – the plaintiff had not rested. No. And there's no – I don't think there's any court that said you have to – the plaintiff has to rest their complete case. It's just a matter of have they completed an issue. Well, there was – there was at least one more witness and perhaps more who was going to address issues of liability. There was someone who was actually physically there at the time who was testifying. No. No. That's not correct, Your Honor. So that's where I was headed with that. So on Wednesday morning, he started calling damage witnesses. The court had told him on at least two occasions, I'm considering dismissing the case on liability. Present anything else you have on liability. Plaintiff did not have any other liability witnesses. What about Dr. Doyle? He didn't – Dr. Doyle was not going to be available until after I, the defendant, had started his case in chief on Friday, three days later, after – So what? So I guess I don't understand why his schedule then can – allows the trial court to convert a Rule 50 motion into a summary judgment motion, which is what he actually said he was doing. He said, well, I'm just viewing this as a summary judgment motion. Well, and – and I agree. This case also probably would have been appropriate for summary judgment as there are so many factually similar cases that were – Well, that's – but that's not – that's not our question. Our question is procedurally how can the court mix and match like this and take – anyway. Okay. So you understand the issue, I think.  Yeah. And I hear what you're saying. And so the judge said, I'm considering, granted judgment is a matter of law on liability, put on all of your liability evidence. Plaintiff did not have any other liability witnesses ready to go during his case in chief. He started damage witnesses on Wednesday. I was going to start my case on Thursday. Well, why can't – why can't there – why can't the witnesses be taken out of order? What's – what's wrong with that? And you're forcing someone to substitute a – an oral representation from the lawyer for the live witness's testimony to the jury because they can't be available that day? Is that okay? Well, I think that the plaintiff obviously has the burden of proof. The plaintiff here is on warning that he better put on all his liability evidence. He doesn't do it during his case in chief. He has called all the liability witnesses he has during his case in chief. He wants to call one short witness two days later during – after defendants started his case and after a whole bunch of medical doctors have testified. Here's an eyeball witness who just happens to be a doctor who sees a lady fall on the runway. Well, and I would refer the Court to the record from about page 200 to about page 300 is nonstop eyewitness liability witnesses who were all there. They were on the plane. They were on the jetway. They saw her come off. And it's undisputed. But it's not for the Court to decide that they've heard enough. The ruling wasn't this witness is going to be cumulative and, therefore, I exercise my discretion to manage the trial. That might – that's a different kind of ruling. Nor is the ruling this is a sanction for your – for the plaintiff's lawyer not following the instructions of the Court. That also is a very different kind of rule. The judge did something completely different than that and just said, well, we're going to treat this as summary judgment mid-trial. Well, and I guess I wasn't – it wasn't my impression that the judge was saying we're going to treat this as summary judgment. He's looking – He said so. He said so on page 100 – excuse me, 541, which is page 50 of the excerpt. I'm treating it as a summary judgment type motion. That's what he said he was doing. Well, but I think he was trying – he certainly refers to the requirements of Rule 50A that I'm giving you the chance to be fully heard on all issues of liability, put on all the liability evidence you have. And plaintiff's counsel says, well, I had one more witness. He can't come. Well, tell me everything he would say. And he gave him time. It wasn't spur-of-the-moment like some of the cases with the pro se plaintiff and they say – Counsel, do you see anything untoward in your making your motion for JMOL on lack of proximate cause evidence and lack of defective runway evidence? And the judge deciding the case on no breach of duty and comparative fault. See anything unusual about that? I think – I think there are a number of cases that say Rule 50A can be decided even sui sponte. So I don't think that's appropriate. But I think the factual basis is the same. Let's go to that. The judge, you say, says put on all your evidence as to liability. Right? Is it the duty of the plaintiff to put on the evidence regarding comparative fault? Well, comparative fault is a subset of liability. But the basis – It is. Isn't it an affirmative defense of the defendant? The – Usually.  I hear what you're saying. I hear what you're saying. So when you say put on all your liability testimony, you mean that the judge said put on all the evidence to show that your plaintiff was comparative fault? No. Put on all of your evidence to show that the defendants are at fault. Give me everything you got, because I don't think you have enough. What does that have to do with comparative fault? Well, because – There's only one defendant. There's no comparative fault between defendants. Because the basic facts and the basic facts that supported my motion and supported the judge's ruling were that she got off the plane and exited with – in the normal course of traffic and didn't wait for a wheelchair, didn't ask for a wheelchair, didn't say, I need assistance. And every case that's considered those similar facts says there's no breach and there's no causation. So the judge – so in mine was termed causation. The judge first said breach. He later on said and that also breaks the chain of causation. The basic facts were the same and are undisputed in the record. But you don't dispute that, as a common carrier, you owed Ms. Summers the highest degree of care. That's right. And if she wanted a wheelchair, there was one right there for her. We're happy to give it to her. All she has to do is stop or wait or ask, and it's hers. Whether or not she made it in the reservations, they are always happy to provide wheelchair assistance, and there was one right there. And I think if there's any doubt at all about whether the Court made the right decision, I think you have to go to the transcript of the liability report. I guess the evidence was that there would have been a wheelchair right there if she had asked for one. It would have been. There wasn't one there. There was one there. There was? Yes. I thought that was a disputed fact. All the eyewitnesses who were there say there's a wheelchair parked at the end of the jetway. At the end of the jetway, not at the – Right by the door, at the bottom. So you're getting back out of the plane that you needed. He would not have seen it. And we don't know whether she saw the wheelchair. And all the eyewitnesses say there's one there. But the issue – even if there's not one – Just one second. I envision stepping out of an airplane, and when you just step out of the airplane onto the jetway, you often see wheelchairs right there. Correct. Is that where the wheelchair was? The witnesses, the gate agents and the Clemens, Burgess, and Ahman, all the folks that were there, said we often keep one sitting there. That day, there was one sitting there. And even if there wasn't one, all she has to do is ask, and we're happy to perform. We're happy to get her out. Would you think if she would have gone out, if the chair would have been there and she had used a wheelchair in all the previous times, that she might have said, that's my wheelchair? And this is one of those cases where she's not handicapped. She doesn't need assistance for walking. Her family – she was traveling cross-country by herself. For the big stops in the big airports, they had wheelchair assistance for her to make her connections in Atlanta, get to the gate, get to the end. She comes home to her little airport in Missoula, where she's traveled all the time without wheelchair assistance. She doesn't walk with a wheelchair. She gets up and walks off the plane with the other passengers. This sounds like a wonderful jury argument, but you never got to make it. But it was – but it was undisputed. If you look at it, everybody says the same thing. In those – all the cases, look at it. It says you have to give the airline a chance to perform. You have to ask or wait some time. It's undisputed that within five minutes, she's off the plane and has her fall. And all the cases talk about 10, 15, 20 minutes. That's a de minimis wait. All she had to do was wait or ask, and the chair was hers. So it's undisputed that when she stepped out of the airplane onto the jetway, there was a wheelchair right there. There's – you'll see – Is that the – is that what the evidence was at the time the judge granted the motion for – Yes, but – and he didn't rely on – he didn't rely on that because he said – Was there – was there trial evidence on that point right then when the judge granted – All that evidence is – that's right. All that evidence is gone. And the jury's heard it. The judge said, I recognize that there's at least one witness that said, I don't remember whether there was one there or not. So for my ruling, I'm not going to assume it was there. That's not part of my ruling. The point is she didn't wait. She didn't ask. And all the cases say you have to give them a chance to perform. And it was undisputed. And the offer of proof – Well, it would make a difference if the wheelchair is right there and you step out of the jetway and the wheelchair is right there and you walk right past it. But in the offer of proof – I didn't understand that to be the facts, but maybe it is. And the offer of proof didn't change anything. The offer of proof was that the doctor came off behind her. She had walked off the plane and up the jetway in the normal course of traffic. She didn't wait. She didn't ask. So there was nothing that was going to change the liability facts from the offer of proof. Thank you, counsel. Thank you very much. Mr. Durham, you have a short time remaining. And would you, with part of that time, address the evidence on the point that Judge presence of a wheelchair immediately visible upon exiting the airplane? In my reply brief, I specifically addressed it, cited it to the record. The airline witnesses said that there was a wheelchair there next to the aircraft door. Decedent's daughter, who was waiting for her downstairs in the terminal, was advised that there was a problem, came up, went to her mother, who was lying on the ground in the jetway, and looked at the bottom, toward the bottom of the jetway to the door of the aircraft and said there was no wheelchair there. That created a conflict in the evidence, which I cited to in the reply brief. And had, I believe, His Honor – I mean, I believe the magistrate acknowledged that and said, okay, we're going to decide this without a wheelchair at the bottom. There was no wheelchair.  That's incorrect. I believe he did. I believe he said that. The reference to eyewitnesses called from pages 200 to 300, those were all airline witnesses. My one and only witness, who was a passenger, because my decedent was no longer available, was Dr. Doyle. Dr. Doyle was a doctor. He had a busy schedule. I thought that we had a – What did Dr. Doyle say, if anything, about the wheelchair? Was – at the beginning of the jetway, did he have one recollection one way or the other? Your Honor, we're going off the record, but my recollection is he didn't recall. No, not off the record. When the judge asked you to make an offer of proof, did you say, Dr. Doyle would testify that when he got off, he saw there was no wheelchair? I didn't, no. I would not have said that. So you've got the daughter only, right? The daughter only. And I believe this is on the record. If it's not, I apologize. What do I do? I believe it's on the record. Dr. Doyle's wife, with whom I have not spoken, was with him and had a comment to make about the wheelchair. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted.
judges: Graber, Paez, Bea